**In the Matter of James E. BROWN.**

**No. 7429.**

District of Columbia Court of Appeals.

Argued Jan. 31, 1974.

Decided May 20, 1974.

Earl C. Dudley, Jr., Washington, D. C., with whom David Povich, Washington, D. C., was on the brief, for appellant. William E. McDaniels, Washington, D. C., also entered an appearance for appellant.

William D. Pease, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, John A. Terry and John A. McCahill, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, GALLAGHER and PAIR, Associate Judges.

PAIR, Associate Judge:

Presented on this appeal is the recurring problem which results when an attorney is held in contempt of court for inadvertent tardiness. At oral argument and after consideration of the record and briefs, it appeared that counsel for the parties—as well as the court below—apparently misapprehended the essential element of an adjudication of criminal contempt. We, therefore, remanded the record to the trial court with direction to file, in the record, a certificate of contempt in accordance with Super.Ct.Crim.R. 42(a).

James E. Brown (appellant), counsel for a defendant in a criminal case, was adjudged in contempt when he was tardy in returning to the court after a short recess. Appellant argues, *inter alia,* (1) that he was entitled to a hearing before any such adjudication, and (2) that because of the absence of the requisite *mens rea,* a single instance of non-willful tardiness is insufficient to support an adjudication of contempt.

What appears from the record is that on May 10, 1973, a jury was empaneled to try three consolidated criminal cases. One of

the defendants was represented by appellant, a member of the Public Defender Service.

The process of empaneling the jury was completed around noon, and the court dismissed the jury to "take our mid-morning recess." The judge stated, "I am going to excuse you now, and ask you to be back in your places at quarter after twelve." After the withdrawal of the jury panel, the court dismissed the witnesses in the case, saying "The witnesses are all excused. Please be back in the courtroom, here, at quarter after twelve." The court then continued colloquy with counsel and, after finding one of the defendants in contempt of court for having been late for the commencement of the trial, the judge retired from the bench at approximately 12:07 p. m., with the remark, "All right. 12:15."

When the court reconvened at 12:15, none of the three defendants was present, nor was appellant or Frederick Sullivan, the attorney for another defendant. At 12:22 the court remarked to the jury that:

> [A]pparently they concluded that the Court had recessed, taken its luncheon recess until 1:15 rather than 12:15; so they are going to be a few minutes returning. So, under the circumstances, I am going to excuse you now for lunch rather than sit here and wait for them to come back.

Shortly thereafter the defendants and attorneys involved were located in appellant's office at the Public Defender Service and they returned to the court at 12:28 p. m. Appellant apologized to the court for his tardiness, but the judge remarked:

> You think about your apology between now and 1:30, when I will be back on the bench. . . .

At 1:30 p. m., the court reconvened and appellant and Sullivan took upon themselves the responsibility for the absence of their clients. They proceeded to explain to the court that they had absented themselves with the understanding that court had recessed for lunch until 1:15.

MR. BROWN: Yes. Your Honor, I heard when you said that we were going to recess until 12:15. This is what you told the jury. And at that time, someone asked you, or spoke to you, and thought it was a mistake, but I don't know what your response was.

THE COURT: The Court Reporter asked me, did I mean 1:15. I told him, "No, 12:15."

Is that right, Mr. Reporter?

THE COURT REPORTER: Yes, Sir.

MR. BROWN: I didn't hear the response. I assumed that was the question. At that time, I thought there was a confusion, that you meant 1:15; so therefore, I then asked the Court if you would take up a preliminary matter, because I thought we were going on the luncheon recess, and you said, "O.K." And then you said, "Wait until I finish with Mr. Parker and his client."

Then, as soon as you finished with them, you got up and left. And I tried to speak to you, as you were walking out, and you kept on going. I was under the impression, Your Honor, that we were going on a luncheon recess; so, therefore, I walked out, and I talked to Mr. Sullivan and the three defendants, and we were talking about the defense and that sort of thing. I took them over to my office until 1:15. I thought I was to be back at that time.

I apologize. It's just the confusion, Your Honor, what was going on. I just didn't—I thought that the Court had just made an oversight when you said at 12:15, since it was about two or three minutes after twelve. I thought we were taking a luncheon recess.

The court summarily held both appellant and Mr. Sullivan in contempt of court and sentenced them to two days in jail or a

fine of $50 each. Mr. Sullivan inquired of the court whether it was making a finding of willfulness on the part of the convicted attorneys. The court responded:

> Now, whether there was willfulness on your part is something I am not prepared to say. I am prepared to say that only a gross indifference, gross carelessness respecting what is happening in this court could explain your nonappearance at 12:15.

Later that afternoon, J. Patrick Hickey, an attorney of the Public Defender Service, appeared on behalf of appellant and made two requests of the court: "one, to present evidence on [appellant's] behalf; and, two, to submit to the Court a legal memorandum concerning the rights of an accused in a contempt proceeding." The court denied these requests, stating:

> [T]he contempt . . . as I understand the law, was committed in the presence of this court. I think that the United States Court of Appeals, in the last case that came down, *unexplained tardiness or absence of an attorney, without sufficient justification,* constitutes contempt, punishable by the Court. [Emphasis added.]

The court stated further:

> *It has been my policy,* as Mr. Sullivan will bear out, to issue a show-cause order when an attorney is late before me without explanation, and *give him,* as I referred to it, as *"one shot at the apple"* or *"one bite at the apple."* Mr. Sullivan as I characterized it, has had one and seven-eighths bite of the apple. Whether or not his tardiness yesterday morning, 10 minutes late, constituted an additional bite, I concluded that it was not by virtue of the traffic jam down at Lansburgh's. *But I must say this of Mr. Brown, I have not given him the so-called one chance to be tardy before me,* and I did not because this is a particularly aggravated case. . . . [Emphasis added.]

 Under our statute tardiness or non-appearance may be punished as con-

tempt committed in the presence of the court. But one who is tardy or does not appear is not necessarily to be dealt with in summary fashioning. In re Nesbitt, D.C.App., 313 A.2d 576 (1973); Sykes v. United States, D.C.App., 264 A.2d 894 (1970), rev'd on other grounds, 144 U.S. App.D.C. 53, 444 F.2d 928 (1971). Super. Ct.Crim.R. 42(a) provides:

> (a) Summary Disposition. A criminal contempt may be punished summarily *if* the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. *The order of contempt shall recite the facts and shall be signed by the judge and entered of record.* [Emphasis added.]

*See, in this connection,* United States v. Marshall, 451 F.2d 372 (9th Cir. 1971).

From our view of the record, we are not persuaded that appellant had the requisite criminal intent to warrant an adjudication of contempt. In re Nesbitt, *supra;* Sykes v. United States, *supra.* In fact, the trial court conceded as much when it refused to make a finding of willfulness. Indeed, what the court said was:

> . . . *I don't believe that either Mr. Brown or Mr. Sullivan willfully absented themselves from this Court, that is to say, consciously and intentionally.* I think I said that it "reflects gross carelessness," and I also said "callousness," "gross callousness and gross indifference as to what was going on in this Court." Consequently, whether they were talking or doing something else, I am not prepared to say. But that constituted the type of indifference and negligence, lack of care insofar as listening to the proceedings of the Court, and, in my judgment, must be viewed as contemptious [sic] and gross negligence and gross indifference, in the absence of willfulness, that is, intentionally, an intentional act; and if that doesn't constitute contempt, I am afraid you have to get the Court of Appeals to tell me that.

. . . . . . .

. . . I find that, contrary to what I stated, I find that where I said that everybody would be back at 12:15 only twice, it was three times, that everybody was to be back in this Court at 12:15. So under the circumstances, $50.00 and 48 hours stands. [Emphasis added.]

The following then transpired:

MR. HICKEY: Very well, Your Honor.

. . . I would just like to make for the record, I think, an appropriate motion for a judgment of acquittal on the grounds that there is an inadequate showing of criminal intent required to show—

THE COURT: All right. It's quite clear. I am satisfied, and I think I stated on the record that *I don't believe that either Mr. Brown or Mr. Sullivan willfully absented themselves from this Court, that is to say, consciously and intentionally.* I think I said that it "reflects gross carelessness," and I also said "callousness," "gross callousness and gross indifference as to what was going on in this Court." . . . [Emphasis added.]

 There is no doubt that, under Rule 42(a), the court has the power, in appropriate circumstances, to summarily hold an attorney in contempt of court. As the court said in Sykes v. United States, *supra,* where a similar factual situation was involved:

The requisite intent may of course be inferred if a lawyer's conduct discloses a reckless disregard for his professional duty. In the appellant's case, however, there was no evidence that he deliberately or recklessly disregarded his obligation to the court, or that he intended any disrespect for the court. On the contrary it is clear from his unchallenged explanation that his failure to appear was not by design . . . . [144 U.S.App.D.C. at 55, 444 F.2d at 930.]

So it is in the case at bar. While gross callousness, gross negligence, or gross indifference of a member of the bar may under some circumstances constitute a breach of professional duty and warrant an adjudication of contempt, here the trial judge stated categorically that:

. . . I don't believe that either Mr. Brown or Mr. Sullivan willfully absented themselves from this Court, that is to say, consciously and intentionally. . . .

Certainly, therefore, appellant could not have had the requisite criminal intent. *See* In re Nesbitt, *supra.* *Cf.* In re Rosen, D. C.App., 315 A.2d 151 (1974); In re Shorter, D.C.App. 236 A.2d 318 (1967); and In re Saul, D.C.Mun.App., 171 A.2d 751 (1961), where counsel's tardiness in each case was the result of his involvement in other court proceedings. We hold therefore that the court erred in the exercise of its summary power under Rule 42(a) and improperly held appellant in contempt.

Reversed.