**In re Melvin M. BURTON, Jr., Respondent.**

**No. 89–SP–366.**

District of Columbia Court of Appeals.

Argued Oct. 31, 1991.
Decided Aug. 28, 1992.

Melvin M. Burton, Jr., pro se, with whom Claude W. Roxborough was on the Opposition and Response to Motion to Show Cause and to Dismiss, for respondent.

Elizabeth A. Herman, with whom Thomas E. Flynn, Bar Counsel at the time the brief was filed, was on the brief, for the Office of Bar Counsel.

Before TERRY and FARRELL, Associate Judges, and MACK, Senior Judge.

FARRELL, Associate Judge:

 This case is before a division of this court on review of an order entered by a single judge of the court adjudging respondent in criminal contempt for violation of this court's 1984 order disbarring him from the practice of law in the District of Columbia. *See* D.C.Code § 11–741 (1989). The contempt arose from Bar Counsel's request for an order to show cause why respondent should not be held in contempt for engaging in the practice of law despite his disbarment. After finding respondent in contempt, the judge conducting the proceeding imposed a sentence of sixty days of imprisonment, but suspended execution of the sentence in favor of unsupervised probation for a period of three years. Respondent contests the sufficiency of the evidence to support the finding of contempt; the authority of Bar Counsel (rather than the Committee on Unauthorized Practice of Law) to initiate and prosecute the contempt proceedings; and the severity of the sentence imposed. We uphold the judgment of contempt.[1]

## I.

On January 11, 1984, this court ordered that respondent be disbarred from the practice of law in the District of Columbia effective thirty days from the date of the court's order.[2] *In re Burton*, 472 A.2d 831 (D.C.1984). In March of 1989, Bar Counsel petitioned this court for an order to show cause why respondent should not be held in contempt of court for violation of the disbarment order. The ground for the petition was that respondent had held himself out as an attorney and practiced law in the District by participating in an employment discrimination suit filed on behalf of a client in the United States District Court for the District of Columbia.

Pursuant to D.C.Code § 11–707(a), this court designated the Honorable Stephen F. Eilperin of the Superior Court as a member of this court to determine, after a hearing, whether respondent should be held in contempt. Judge Eilperin held three days of evidentiary hearings at which respondent was afforded full opportunity to present evidence and cross-examine witnesses against him. On February 5, 1991, Judge Eilperin issued a Memorandum and Order setting forth his findings of fact and conclusions of law. He subsequently adjudged respondent in contempt and sentenced him in the manner described at the outset.[3]

In his opinion, Judge Eilperin identified the "principal issue raised by Bar Counsel [as] relat[ing] to Mr. Burton's actions with respect to an employment discrimination lawsuit filed in federal district court by Ms. Joan Darden." The judge was persuaded by the evidence "beyond a reasonable doubt that Melvin M. Burton, Jr. knowingly and intentionally took responsibility for handling Ms. Darden's employment discrimination case in federal court and held himself out to Ms. Darden as a practicing

---

1. D.C.Code § 11–741 sets forth this court's contempt authority as follows:

 In addition to the powers conferred by section 402 of title 18, United States Code, the District of Columbia Court of Appeals, or a judge thereof, may punish for disobedience of an order or for contempt committed in the presence of the court.

 The statute, by its terms, does not provide for an "appeal" to a division of this court from an order of contempt entered by a single judge of the court. We have, however, provided by rule for such appeal from a single-judge order of contempt in proceedings initiated by the Committee on Unauthorized Practice of Law. D.C.App.R. 49(d). As discussed in part III, *infra*, the present contempt proceedings differ

from those contemplated by Rule 49(d). Nevertheless, we are satisfied that our combined authority to punish for contempt, § 11–741, and to prescribe rules by which this court "shall conduct its business," § 11–743, enables us to afford review by a division of the court of the contempt order entered in this case.

2. The order eventually became effective on May 2, 1984.

3. In view of the sentence imposed by Judge Eilperin, respondent was not entitled to a jury trial. *Brookens v. Committee on Unauthorized Practice of Law*, 538 A.2d 1120, 1122–23 (D.C. 1988); *In re Evans*, 411 A.2d 984, 989–93 (D.C. 1980).

attorney." More particularly, the judge found that

> Mr. Burton took responsibility for [Ms. Darden's] discrimination claim—not only pursuing it administratively as he had a right to do—but drafting the complaint for filing in federal district court, preparing Ms. Darden for her deposition, preparing her memorandum opposing summary judgment, counseling her on the court appearances, advising her on courses of action after [the district judge's] decision, holding himself out to Ms. Darden as a person authorized to perform those services, and accepting checks tendered as attorney's fees.
>
> In all these respects he was practicing law within the meaning of Rule 49 [4] of the District of Columbia Court of Appeals, and was doing so knowingly and willfully.

## II.

■ Judge Eilperin, though designated a member of this court, served as the trier of fact in adjudging respondent in contempt. In critical part his findings rested upon an evaluation of the credibility of both respondent and Ms. Darden. Accordingly, we shall not disturb those findings unless they are plainly wrong or without evidence to support them. *Cf.* D.C.Code § 17–305(a) (1989) ("plainly wrong" standard of review applied to factual findings underlying "order or judgment of a lower court" brought before this court for review); *In re Kirk*, 413 A.2d 928, 930 (D.C.1980) (trial court determination of contempt reviewed under § 17–305(a) standard). Respondent does not argue, and no reason is apparent, why the fact that Judge Eilperin sat as a member of this court—in effect serving as a special master—dictates a different standard of review.

■ We have reviewed the record in light of the judge's carefully documented findings, and conclude they are well-founded. Respondent takes repeated issue with the judge's decision to discredit his testimony and to credit that of Ms. Darden. That decision, however, was based partly on what the judge found were implausible inferences respondent asked to be drawn from his conduct, and partly on the corroboration afforded Ms. Darden's testimony by other evidence in the case. Respondent's defense was that he never held himself out to Ms. Darden as an attorney and that she was represented in the district court action solely by Messrs. Iglehart and Blake, both attorneys authorized to practice law. However, there is ample support in the record for the judge's contrary finding that respondent represented himself to Darden as a lawyer and that, while

> Mr. Iglehart or Mr. Blake may have formally signed court papers ˙or entered their appearances for Ms. Darden ... [, t]hey were no more than marionettes on strings held by Mr. Burton. It was he who maneuvered and controlled their movements.

We therefore sustain the sufficiency of the evidence of contempt.

## III.

■ Respondent questions the authority of Bar Counsel to initiate and prosecute proceedings for contempt against a person engaged in the unauthorized practice of law, contending that Rule 49 of the rules of this court, which governs "Unauthorized Practice of Law," expressly commits the decision whether to initiate contempt proceedings for such conduct to the Committee on Unauthorized Practice of Law. Rule

---

**4.** Rule 49(b)(3) of the Rules of this Court, entitled "Unauthorized Practice of Law," states in part:

> The practice of law as used in this rule shall include, but is not limited to, appearing for any other person as attorney in any court, or preparing for any other person any *deeds*, mortgages, contracts, assignments, discharges, leases, trust instruments or any other instruments affecting real or personal property or any interest therein, or any wills, codicils, or any other instruments affecting the disposition of property of decedents' estates, or any pleadings of any kind in any action brought before any court, or preparing or expressing formal *opinions or consulting with respect to* any of the foregoing or on any other matters of law.

49(d).[5] Respondent makes no challenge, nor could he, to this court's jurisdiction to punish by contempt disobedience of an order suspending or disbarring an attorney from the practice of law. The court's disciplinary jurisdiction over attorneys it has disbarred—but who may seek reinstatement after five years, *In re McBride*, 602 A.2d 626 (D.C.1992) (en banc)—is unquestioned. D.C. Bar Rule XI, Sec. 1(a). And the court's power to punish by contempt violations of its orders, D.C.Code § 11–741, necessarily extends to orders barring an attorney from the further practice of law in the District of Columbia. Hence this court, on its own motion, would have unquestioned jurisdiction to initiate contempt proceedings against a disbarred attorney no matter what the source of the allegation of unauthorized practice. The fact that Bar Counsel or anyone else initiated the request for a show cause order, and prosecuted the contempt charge at the court's behest, can have no effect upon the jurisdiction of the court to hold respondent in contempt.

■ Instead, respondent's argument appears to be that the court has violated its own rules (specifically Rule 49(d)) by convening contempt proceedings upon petition by Bar Counsel rather than the Committee on Unauthorized Practice. The argument in essence is that this court, by adopting Rule 49, has provided that every case of unauthorized practice of law must begin administratively and proceed through the investigative and formal hearing procedures set forth in Rule 49 before contempt may be initiated. *See* Rule 49(e)(3) ("Investigation"); Rule 49(e)(4) ("Formal Proceedings").[6] We reject this argument, concluding that Rule 49 is addressed to situations not presented here.

■ As our previous decisions in *In re Banks*, 561 A.2d 158 (D.C.1987), and *Brookens v. Committee on Unauthorized Practice of Law, supra* note 3, make clear, Rule 49 and contempt proceedings initiated by the Committee on Unauthorized Practice relate to the situation either of persons who are not attorneys but hold themselves out as such (*Banks*), or of attorneys licensed by another jurisdiction but not the District of Columbia who nonetheless attempt to practice law in this jurisdiction other than in the limited manner permitted by Rule 49 (*Brookens*). Respondent, by contrast, was initially licensed to practice law in the District of Columbia but was disbarred. "[A]ll persons who have been suspended or disbarred by this Court are subject to the disciplinary jurisdiction of this Court and its Board on Professional Responsibility." D.C. Bar Rule XI, Sec. 1(a). Bar Counsel, in turn, is appointed by the Board and is authorized "[t]o investigate all matters involving alleged misconduct by an attorney subject to the disciplinary jurisdiction of this Court," *id.*, Sec. 6(a)(2); that conduct includes "[f]ailure to comply with any order of the Court." *Id.*, Sec. 2(b)(3). An attorney disbarred by this court is perforce under an "order" to refrain from the practice of law in the District of Columbia until reinstated. *See also* D.C. Bar Rule XI, Sec. 14(e) ("The disbarred ... attorney, after entry of the order [of disbarment], shall not accept any new retainer or engage as attorney for another in any new case or legal matter of any nature"). We conclude that Bar Counsel, in keeping with this mandate to investigate misconduct by attorneys, including

---

5. Rule 49(d) provides:

 Violations of the foregoing provisions of this rule shall be punishable as contempt and/or subject to injunctive relief in a proceeding to be commenced by the Committee on Unauthorized Practice. Such proceedings shall be conducted before a judge of this court designated by the chief judge and shall be governed by the Rules of Superior Court of the District of Columbia which govern civil matters. These proceedings are subject to review in the usual appellate practice, by the filing, by either the petitioning Committee on Unauthorized Practice or the respondent, of a notice of appeal, with the clerk of this court within 10 days from the entry of the judgment by the hearing judge.

6. Rule 49(e)(5)(c) specifically states that, "[i]f warranted, formal contempt proceedings may be initiated under Rule 49(d)(1) [sic], provided, however, that action pursuant to this subsection is preceded by the formal proceedings specified in section (4) above."

disbarred attorneys, may properly petition this court for contempt proceedings involving an attorney disbarred by the court but who allegedly continues to practice law in the District of Columbia. Rule 49 does not require that that conduct be channeled through the investigative and hearing procedures of the Committee on Unauthorized Practice.

## IV.

 Finally, we reject respondent's challenge to the alleged severity of his sentence. Since this matter is here by way of an adjudication of criminal contempt, not a recommendation for attorney discipline made by the Board on Professional Responsibility, we are under no obligation to review the sentence so as to avoid "foster[ing] a tendency toward inconsistent dispositions." D.C. Bar Rule XI, Sec. 9(g). To be sure, this court is "guided by the principle of proportionality in determining whether or not a sentence for contempt bears a reasonable relationship to the underlying conduct." *Caldwell v. United States*, 595 A.2d 961, 968 (D.C.1991). We have no doubt, however, that respondent's sentence of unsupervised probation for three years is commensurate with the conduct found by Judge Eilperin.

The order adjudging respondent in contempt of this court is, therefore,

*Affirmed.*

Separate statement of MACK, Senior Judge:

In the *Brookens*[1] case, arising under our D.C.App.R. 49,[2] we noted, "The great weight of authority renders it almost universally accepted that the highest court in the jurisdiction is imbued with the inherent authority to define, regulate, and control the practice of law in that jurisdiction" [citations omitted]. Today we are holding that a charge of unauthorized practice of law made against a previously disbarred attorney need not be channeled through the formal investigative and hearing provisions of Rule 49, but may be prosecuted as criminal contempt. I do not question the jurisdiction of this court or that of the Board on Professional Responsibility in this regard.[3] I write to point out some of the problems, exemplified by the course of events in this case, that make this issue one best left to the full court either in its administrative capacity[4] or for en banc consideration.

As an appellate court, we are not in the business of factfinding and imposing criminal sentences. There is little helpful precedent. Put aside for the moment the provisions of Rule 49. In the only two cases arising in this jurisdiction which have adjudged disbarred attorneys in criminal contempt (one in 1930,[5] one in 1939),[6] the Court of Appeals for the District of Columbia was reviewing the findings and orders of lower courts that had held the lawyers in contempt for disobedience of the orders of those courts. Moreover, pursuant to our own contempt statute, D.C.Code § 11–741 (1992 Supp.), it is the Court of Appeals (or a single judge thereof) which may punish for disobedience of an order or for contempt committed in the presence of our court. Against this historical back-drop, and having gone this far with the problems

---

**1.** *See Brookens v. Committee on Unauthorized Practice of Law,* 538 A.2d 1120, 1125 (D.C.1988).

**2.** D.C.App.R. 49(d) provides:

Violations of the foregoing provisions of this rule shall be punishable as contempt and/or subject to injunctive relief in a proceeding to be commenced by the Committee on Unauthorized Practice. Such proceedings shall be conducted before a judge of this court designated by the chief judge and shall be governed by the Rules of Superior Court of the District of Columbia which govern civil matters. These proceedings are subject to review in the usual appellate practice, by the filing, by either the petitioning Committee on Unauthorized Practice or the respondent, of a notice of appeal, with the clerk of this court within 10 days from the entry of the judgment by the hearing judge.

**3.** D.C. Bar Rule XI, Sec. 1(a).

**4.** D.C.Code § 11–743 (1989).

**5.** *See Bowles v. Laws,* 59 App.D.C. 399, 45 F.2d 669, *cert. denied,* 283 U.S. 841, 51 S.Ct. 488, 75 L.Ed. 1452 (1930).

**6.** *See In re Fletcher,* 71 App.D.C. 108, 107 F.2d 666 (1939).

of Mr. Burton, I am somewhat uncomfortable with our analysis.

The instant case took form when, in response to a motion to show cause filed by Bar Counsel, we directed Mr. Burton to appear before a trial judge for a determination as to whether he was in criminal contempt for practicing law in violation of our order of disbarment. The trial court, after a hearing, found that respondent had been practicing law in violation of our order and "recommended" that he be found in criminal contempt. When an appeal was taken from that recommendation, we returned the case to the trial court for the entry of a judgment of contempt and for sentencing. As our authority for our doing so, we cited *Brookens, supra* note 1, a case arising under our D.C.App. Rule 49 in which a judge of this court sat as the fact-finder and entered the judgment of contempt subject to review by the express provisions of the Rule.

In the instant case, if the trial court was sitting by designation as a member of this court both in factfinding and punishing (*see* D.C.Code § 11–741), and if Rule 49 is unavailable to respondent, there follows an untidy problem of our jurisdiction to review. If the trial judge was sitting merely as a factfinder, we may have erred in sending the case back for entry of a judgment for criminal contempt.